IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANIEL RAMIREZ,

    Plaintiff,

      v.

CRETE CARRIER CORPORATION, et
al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-4399-TWT

## OPINION AND ORDER

This is a personal injury action. It is before the Court on Defendants Crete Carrier Corporation ("CCC") and Mark Kelly's Motion for Partial Summary Judgment [Doc. 48]. For the reasons stated below, the Defendants' Motion for Partial Summary Judgment [Doc. 48] is GRANTED in part and DENIED in part.

## I.  Background[1]

This action arises out of a 2023 motor vehicle collision in Dekalb County, Georgia.

### A. Defendant Kelly's Employment with Defendant CCC

---

[1] The operative facts on the Motion for Partial Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B). Because the Plaintiff has made no objections, all well-founded factual assertions by the Defendants will be deemed admitted.

Defendant Kelly is an employee of Defendant CCC and has been working for Defendant CCC since January 2018. (Defs.' Statement of Undisputed Material Facts ¶ 8 [Doc. 48-2]). He has a valid commercial driver's license ("CDL") issued in the state of Pennsylvania which has never been revoked or suspended. (*Id.* ¶¶ 10-11). Defendant Kelly was hired by CCC after successfully completing a six-week trucking school class. (*Id.* ¶ 9). At the time of his hire, Defendant Kelly had only been involved in one motor vehicle accident 15-20 years before. (*Id.* ¶ 12). Additionally, when he was around 18-19 years old, Defendant Kelly was convicted of a Driving Under the Influence charge and had a six-month suspension of his non-CDL license in New Jersey. (Kelly Dep. at 40:13-40:16 [Doc. 51-1]).

After being hired by Defendant CCC, Defendant Kelly completed a one-week orientation, which included a drug and hair follicle test, three days of classroom work, and a driving road test. (*Id.* ¶ 13). Since Defendant Kelly did not have prior experience as a truck driver, a trainer employed by Defendant CCC rode with him for the first two months of his employment and provided extensive training regarding the operation of a tractor trailer. (*Id.* ¶ 14). Since then, Defendant Kelly completed two safety courses and annual safety trainings as part of his employment with Defendant CCC. (*Id.* ¶¶ 15-16). From the time of his hire until the motor vehicle collision in 2023, the only motor vehicle incidents Defendant Kelly was involved in were backing incidents

involving minimal property damage to his truck or trailer, and only one involved another individual's vehicle, where only minor damage occurred. (*Id.* ¶ 17).

### B. The Motor Vehicle Collision and Aftermath

On November 23, Defendant Kelly and the Plaintiff were driving their vehicles on Interstate 85. (*Id.* ¶¶ 1-2). Defendant Kelly was in the third lane and needed to merge into the lane to his right in order to get on Interstate 285. (*Id.* ¶ 2). After checking his mirrors and looking for oncoming traffic before changing lanes, he activated his right turn signal and began to slowly merge into the other lane. (*Id.* ¶¶ 3-4). In the course of his lane change, Defendant Kelly collided with the Plaintiff's vehicle as he was merging into the other lane. (*Id.* ¶ 5). At no time did Defendant Kelly see the Plaintiff's vehicle before impact. (*Id.* ¶ 6).

Following the accident, Defendant Kelly stayed at the scene, checked on the Plaintiff so make sure he was okay, and spoke with the police officer. (*Id.* ¶ 7). Defendant Kelly ultimately received a citation from the police officer for failing to maintain his lane. (Kelly Dep. at 80:20-81:2). The next month, he pled guilty to the offense and paid the relevant fine. (*Id.* at 81:3-81:6). Defendant CCC took Defendant Kelly out of service a few weeks later and ultimately terminated Defendant Kelly's employment. (*Id.* at 36:11-36:24). It is unclear if the termination directly related to the motor vehicle collision with the Plaintiff.

(*See id.* at 33:23-36:24).

## C. Procedural History

The Plaintiff ultimately filed suit with the State Court of DeKalb County to recover damages arising from the subject motor vehicle collision. (*See generally* Summons and Complaint [Doc. 1-3]). The Defendants properly removed the case to this Court. (*See generally* Notice of Removal [Doc. 1]; Mot. to Remand Order [Doc. 21] (denying the Plaintiff's Motion to Remand)). After the completion of discovery between the parties, the Defendants filed this Motion for Partial Summary Judgment.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). A court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). On cross-motions for summary judgment, a court views the facts "in the light most favorable to the non-moving party on each motion." *Greater Birmingham Ministries v. Sec'y of State, State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then

shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

The Plaintiff asserts claims relating to (1) the negligence of Defendant CCC, (2) the negligence of Defendant Kelly, (3) combined and concurrent negligence, (4) punitive damages, and (5) attorneys' fees and costs. The Defendants' Motion for Partial Summary Judgment seeks summary judgment on the claims relating to Defendant CCC's negligence, punitive damages, and attorneys' fees.

### A. Defendant CCC's Negligence

The Plaintiff asserts a negligence claim against Defendant CCC under respondeat superior and because, he asserts, it: (1) negligently hired or contracted with Defendant Kelly to drive the vehicle at issue; (2) negligently trained Defendant Kelly; (3) negligently entrusted Defendant Kelly to drive the vehicle professionally; (4) negligently retained Defendant Kelly to drive the vehicle at issue; (5) negligently qualified Defendant Kelly; and (6) otherwise failed to act as a reasonably prudent company under the circumstances. (Complaint ¶ 45 [Doc. 1-3]). To state a cause of action for negligence in Georgia, "a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the

breach and the injury." *Martin v. Ledbetter*, 342 Ga. App. 208, 211 (2017) (citation modified). The Defendants argue for summary judgment on every ground outside of respondeat superior because, they argue, there is insufficient evidence to support any of the claims.

As an initial matter, the Plaintiff fails to respond to the Defendants' Motion for Partial Summary Judgment for their catchall cause of action against Defendant CCC. The Eleventh Circuit has explained that, when a plaintiff fails to respond to a defendant's arguments, a district court has discretion to treat the cause of action as abandoned. *Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 854-55 (11th Cir. 2013) (quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). The court explains that "there is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Id.* at 855 (quoting *Resol. Tr. Corp.*, 43 F.3d at 599 (citation modified)). The Court exercises its discretion here. The Plaintiff's catchall negligence claim against the Defendants requires the Court to consider all potential claims against Defendant CCC and make the Plaintiff's arguments for him. Although the Defendants respond to the claim, the Plaintiff does not address it within his briefing while responding to the five other claims. Because the Court declines to construct arguments on behalf of the Plaintiff, the Court grants summary judgment on the catchall provision of the negligence cause of action.

The Court also grants summary judgment to the Defendants on the Plaintiff's negligent qualification claim. Although the Plaintiff includes negligent qualification within his arguments for negligent hiring and retention claims, the Plaintiff does not argue separate grounds for a negligent qualification claim under Georgia law. In addition, neither the Defendants nor the Court can find a claim for negligent qualification recognized under Georgia law. Because no claim for negligent qualification appears to exist, the Court grants summary judgment on the claim. The Court will address the remaining claims in turn.

### 1. Negligent Hiring and Retention

"A defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." *ABM Aviation v. Prince*, 366 Ga. App. 592, 597 (2023) (citation modified). As the Georgia Court of Appeals explains, "[n]egligent hiring and retention are closely related, separated only by *when* the employer becomes aware of the information that amounts to reasonable notice of the employee's incompetence." *Id.* (emphasis in original). "If the employer discovers the employee's incompetence after hiring, the retention becomes the negligent act." *Id.* (citation omitted). Like most claims, the

7

plaintiff must demonstrate sufficient evidence to establish his claims for negligent hiring and retention. *Id.* (citing *Johnson v. Avis Rent A Car Sys.*, 311 Ga. 588, 589 (2021)).

To satisfy his evidentiary burden, the Plaintiff points to certain categories of evidence to show that Defendant CCC had ample information to act on. First, the Plaintiff points to Defendant Kelly's driving record prior to his employment with Defendant CCC, highlighting his previous collision and his DUI when he was 18-19 years old. (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., at 8 [Doc. 51]). Second, the Plaintiff notes that Defendant CCC knew that the only training Defendant Kelly had was provided by Defendant CCC and that such training only lasted for six weeks, with a week-long orientation. (*Id.*). Third, the Plaintiff points to the fact that Defendant Kelly was involved in several collisions prior to the motor vehicle accident during his employment with Defendant CCC. (*Id.*). Fourth, the Plaintiff points to numerous "hours of service" violations incurred by Defendant Kelly in the course of his employment with Defendant CCC. (*Id.* at 9). Fifth, and finally, the Plaintiff points to the fact that Defendant CCC knew that Defendant Kelly did not go through adequate remedial action after any of his employment incidents. (*Id.*).

Despite this evidence, the Court concludes that summary judgment is warranted on the negligent hiring claim. "The causation element [for negligent hiring] requires showing that, given the employee's dangerous propensities,

8

the victim's injuries should have been foreseen as the natural and probable consequence of hiring the employee." *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 109 (2021) (citation modified). Defendant Kelly had a valid CDL prior to his employment with Defendant CCC which has never been revoked or suspended. (*See* Defs.' Statement of Undisputed Material Facts ¶¶ 10-11). The only negative evidence the Plaintiff points to related to Defendant Kelly pertains to a single collision nearly two decades ago, as well as a DUI conviction at the age of 18 or 19. (*See id.* ¶ 12; Kelly Dep. at 40:13-40:16). And while the Court is unaware of Defendant Kelly's age, the Court can discern that Defendant Kelly had been in the workforce for more than 19 years prior to his employment with Defendant CCC in various roles and is currently considering retirement since his termination with Defendant CCC. (*See* Kelly Dep. at 11:21-12:10, 19:1-20:16). In any case, Defendant Kelly completed his trucking school program months before applying for employment with Defendant CCC. (*Id.* at 17:6-17:12).

Even if this Court were to ignore the temporal weaknesses, nothing suggests that hiring an individual with a single motor vehicle collision and a singular DUI conviction is enough to support a negligent hiring claim. The Plaintiff provides no evidence showing what the industry standard for hiring a trucker would be for the Court to consider whether the Plaintiff breached it in this instance. And even if the Plaintiff did do so, there are questions over

9

whether a single motor vehicle collision and DUI conviction amounts to a "dangerous propensity" Defendant CCC should have been on the lookout for. Thus, the evidence fails to support the negligent hiring claim and summary judgment is warranted.[2]

This is not the case for the negligent retention claim. Defendant Kelly was involved in three collisions prior to the subject incident before the Court. In 2018, Defendant Kelly scraped the wall and cracked the hood of his vehicle. (Kelly Dep. at 70:15-70:19). In November 2021, Defendant Kelly hit a concrete barrier while driving his trailer into a weigh station. (*Id.* at 71:3-71:14). About a month later, he backed into a leading dock, where his vehicle damaged another vehicle's "fender mirror." (*Id.* at 71:15-71:19). He also consistently received hours of service violations for exceeding his service hours in 2018 and 2019. (*See id.* at 53:13-54:15, 57:16-58:1). In each of these cases, Defendant CCC was on notice as it issued disciplinary letters to Defendant Kelly within the scope of his employment. (*See id.* at 53:13-53-54:15, 57:16-81, 70:15-70:19,

---

[2] Before concluding this issue, the Court addresses the Plaintiff's citation to *Cherry v. Kelly Services, Inc.*, 171 Ga. App. 235 (1984). The Plaintiff uses this case to argue that one instance of bad driving is enough to make it past summary judgment on the issue of negligent hiring. (*See* Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J., at 7-8 (discussing *Cherry*, 171 Ga. App. at 235-36)). The case only makes this conclusion because the defendant did not investigate the driver's driving behavior further. *See Cherry*, 171 Ga. App. at 236. Here, the Plaintiff does not offer any evidence to show that there was any further investigation into Defendant Kelly that would have informed Defendant CCC of issues with his driving. Thus, the case is distinguishable from the instant case because the same issue does not exist here.

10

71:3-71:14). Furthermore, vehicle collisions and excessive hours could put Defendant CCC on notice that Defendant Kelly could have a propensity to injure the Plaintiff on the road without seeing the Plaintiff, as that is what happened here.

Admittedly, the Plaintiff's evidence is weak. Nonetheless, the Plaintiff has satisfied his evidentiary burden necessary to establish a prima facie case for negligent retention. Therefore, the Court will not grant summary judgment on this claim.

### 2. Negligent Training

To establish a negligent training claim under Georgia law, "a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury." *Ball v. CSX Intermodal Terminals, Inc.*, 377 Ga. App. 389, 397 (2025). For the purposes of satisfying causation, "[t]he relevant question is whether, assuming the defendant breached a duty of care, 'the kind of harm that occurred was a foreseeable result, or a probable or natural consequence of[ ] that breach.'" *Id.* at 398 (citation omitted) (brackets in original). A plaintiff must point to certain training policies that are related to the accident in order to survive a motion for summary judgment. *ABM Aviation*, 366 Ga. App. at 598.

The Defendants argue that summary judgment on this claim is proper because Defendant Kelly (1) had a valid CDL, (2) had successfully completed

11

trucking school, (3) had not been involved in a motor vehicle accident in 15-20 years, (4) completed Defendant CCC's orientation process, which included a drug and hair follicle test, three days of classroom work, and a driving road test, (5) was accompanied with a trainer for two months when driving his tractor trailer, who provided extensive training, and (6) completed two safety courses during his employment and was required to undergo annual safety training. (Br. in Supp. of Defs.' Mot. to Dismiss, at 7-8).

The Court agrees. Although this was Defendant Kelly's first professional truck driving position, he joined the company after completing trucking school. (Kelly Dep. at 17:6-17:12, 21:6-21:9). The six-week course went over issues with safety, safe operation, inspections, and other items of that nature. (*Id.* at 17:17-17:24). Nonetheless, Defendant CCC provided further training to Defendant Kelly. The crux of the training came from two trainers, who both spent a month with Defendant Kelly and gave him instructions on operating the tractor-trailer. (*See id.* at 23:18-25:23). The trainers supervised his driving, drafted evaluations of his driving behavior, and provided feedback to Defendant Kelly prior to submitting the evaluations to Defendant CCC. (*See id.*). After the training was completed, Defendant CCC then required Defendant Kelly to complete a road test. (*See id.* at 26:4-26:6).

Additionally, Defendant CCC continued to provide training to Defendant Kelly throughout his employment. Defendant Kelly underwent

12

annual safety training and also completed two safety courses during his employment with Defendant CCC. (Defs.' Statement of Undisputed Material Facts ¶¶ 15-16). One of those safety courses was mandated by Defendant CCC after Defendant Kelly was involved in a minor collision. (Kelly Dep. at 26:18-26:24). Additional training was optional and incentivized by Defendant CCC. (*See id.* at 26:25-28:8). In other words, Defendant Kelly had substantial training when he joined Defendant CCC and was continually required to participate in safety training throughout his employment.

The Plaintiff has not identified any specific aspect of the training provided by Defendant CCC that was necessarily inadequate outside Defendant Kelly's motor vehicle collisions, which could doom the claim alone. *See ABM Aviation*, 366 Ga. App. at 598 ("Prince has pointed to no evidence that ABM's training policies were related to the accident in any way, and this claim thus fails."). But he does assert that the evidence provided is sufficient to preclude summary judgment and relies on *Remediation Res., Inc. v. Balding*, 281 Ga. App. 31 (2006), as support for his proposition. There, the plaintiffs brought claims for negligent training and supervision against the employer of a truck driver who ran a stop sign, causing the death of one plaintiff and injury to the other plaintiff. *Id.* at 31, 34. The trial court denied summary judgment on these claims, but the appellate court reversed, finding that "a jury could find that 'the defendant might have foreseen that some injury would result

13

from his act or omission, or that consequences of a generally injurious nature might have been expected.'" *Id.* at 34.

But *Balding* is factually distinguishable from this case. The appellate court made this conclusion because (1) in the 22-year period that the employee had driven for other companies, he had received two speeding tickets and was involved in two minor car accidents and (2) the employer did not have any policy manuals to govern employee conduct while driving a company vehicle and it did not keep driver history or qualification files for any employee. *Id.* These facts show that the employer provided no training to the employee because, without any standard to govern employee conduct while driving a company vehicle, it is not possible to train a driver to certain company standards. Indeed, nowhere in the opinion is there any indication of training provided to the employee. In such a case, it follows that a jury could conclude that the employer is liable for negligent training. That is not true here. The facts present before the Court show that Defendant CCC provided substantial training to Defendant Kelly throughout his employment with the company. Thus, the Court grants summary judgment on the Plaintiff's negligent training claim.

### 3. Negligent Supervision

"An employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or

should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2009) (citation modified). "In applying this standard, the Supreme Court of Georgia has clarified that a plaintiff need not show the defendant employer knew or should have known of an employee's propensity to commit the specific tortious or criminal act that caused the plaintiff's injury." *Hobbs through Eagle v. Integrated Fire Prot., Inc.*, 357 Ga. App. 790, 799 (2020) (citation modified). "Rather, the plaintiff must only show that the harm he suffered was 'within the risk' posed by the offending employee's tendencies." *Id.* at 799-800 (citation modified).

In addressing negligent supervision and negligent retention claims, certain Georgia courts have analyzed both causes of action under one umbrella. *See, e.g., Little-Thomas v. Select Specialty Hosp.-Augusta, Inc.*, 333 Ga. App. 362, 365-367 (2015). This is because the legal standards for a plaintiff to prevail on their negligent retention and supervision claims almost mirror one another. *Compare Adv. Disposal Servs. Atlanta, LLC v. Marczak*, 359 Ga. App. 316, 320 (2021) ("Liability for negligent retention arises when an employer retains an employee who 'the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff.'" (quoting *Munroe v. Universal Health Servs.*, 277

15

Ga. 861, 863 (2004))) *with ABM Aviation*, 366 Ga. App. at 598 ("As we have explained, '[a]n employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff.'" (citations omitted)).

When the legal standards are almost identical, the Court finds no reason to conduct a separate analysis of the negligent supervision claim. Separate from this conclusion, the Defendants still argue that summary judgment is appropriate on the negligent supervision claim because, they argue, there is no evidence of similar behavior by Defendant Kelly that would put Defendant CCC on notice. (Br. in Supp. of Defs.' Mot. for Summ. J., at 9). The Court disagrees. A jury could determine that Defendant Kelly's history of minor tractor-trailer collisions should have put Defendant CCC on notice that the motor vehicle collision with the Plaintiff could occur. Like the negligent retention claim, the evidence is admittedly not strong but, when the Plaintiff sufficiently alleges his prima facie case, making such a factual determination is for the jury, not the judge. Accordingly, the Court denies summary judgment for the Defendants on the Plaintiff's negligent supervision claim.

### 4. Negligent Entrustment

Under Georgia law, negligent entrustment is based on "a negligent act

16

of the owner in lending an instrumentality to another to use, with actual knowledge that the other is incompetent or habitually reckless." *Zaldivar v. Prickett*, 297 Ga. 589, 602 (2015)*, superseded by statute on other grounds as recognized in AU Medical Ctr., Inc. v. Dale*, 373 Ga. App. 521, 532 (2024) (citation modified). "[T]his negligence must concur, as part of the proximate cause, with the negligent conduct of the other on account of his incompetency and recklessness." *Id.* (citation modified). "In the case of negligent entrustment of a vehicle by an employer to an employee, liability is predicated 'on a negligent act of the owner in lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless.'" *Quynn v. Hulsey*, 310 Ga. 473, 477 (2020) (citation omitted). While the claim generally requires "actual knowledge," a plaintiff may satisfy his evidentiary burden by showing "actual knowledge of a pattern of reckless driving or facts from which such knowledge could reasonably be inferred." *CGL Facility Mgmt., LLC v. Wiley*, 328 Ga. App. 727, 732 (2014) (citation modified).

When considering whether the plaintiff has established a prima facie case of negligent entrustment, the Court must look to all evidence of the employee's incompetency or recklessness from before and during the employee's employment with the employer. *See id.* at 732-33; *Collins v. GKD Mgmt., LP*, 697 F. Supp. 3d 1308, 1325-26 (N.D. Ga. 2023). In evaluating the evidence, the Court finds *Collins* loosely instructive. *Collins* involves a tractor-

17

trailer collision with a commuter vehicle. *Collins*, 697 F. Supp. 3d at 1314-15. The court looked to the employee's driving record to ascertain whether the plaintiffs could maintain a claim for negligent entrustment at the summary judgment stage. *See id.* at 1324-26. The employee had a citation for failure to obey a traffic sign before starting his employment with the employer and then received three roadside inspections in less than six months that cited him for several traffic law violations. *Id.* at 1325. The employee also was involved in another collision with minimal damage. *Id.* Despite this, the employer maintained their belief that the employee was competent. *Id.* at 1326.

The court determined that the belief that the employee was a competent driver did not allow the employer to escape liability because "[t]he relevant question is not whether [the employer] believed that [the employee] was a competent driver, but whether a jury could find [the employer] negligent based upon certain proclivities known by [the employer] about [the employee] before the accident in this case occurred." *Id.* Ultimately, the *Collins* court concluded that a reasonable jury could find the employer liable for negligent entrustment. *Id.*

The facts before the Court and *Collins* are different. The court in *Collins* made its conclusion because the employer had actual knowledge of six different driving issues along with testimony indicating worries over his competency. *Id.* The Court has knowledge of three previous collisions during his employment,

18

one of which involved another vehicle, a collision that occurred decades ago and prior to his employment, and a DUI he received at the maximum age of 19. And Georgia courts have held that an employer's knowledge of "a series of serious driving infractions by an employee" can create a question of fact for the jury on the issue of negligent entrustment, even when an employee's previous DUIs were decades ago. *Wiley*, 328 Ga. App. at 732-33 (citation modified).

Construing all facts and inferences in favor of the Plaintiff, the Court declines to grant summary judgment in favor of the Defendants on this claim. Alone, Defendant Kelly's driving history before his employment is not enough to substantiate a claim for negligence. But Defendant Kelly's past, taken with his collisions during his employment, narrowly passes the threshold necessary to send the factual question to the jury. Defendant CCC was aware of all of these incidents, making the issue of whether Defendant CCC knew Defendant Kelly was incompetent or reckless irrelevant because a jury could find that Defendant Kelly's tendencies alone could put the Plaintiff in danger. Thus, the Court does not grant summary judgment on the issue of negligent entrustment.

## B. Punitive Damages

In Georgia, a plaintiff in a tort action may be properly entitled to punitive damages where there is "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness,

19

oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Mere negligence, even gross negligence, is not enough to support a claim for punitive damages." *Lindsey v. Clinch Cnty. Glass, Inc.*, 312 Ga. App. 534, 536, (2011) (citing *Brooks v. Gray*, 262 Ga. App. 232, 232 (2003)). Punitive damages require "a pattern or policy of dangerous driving, such as excessive speeding or driving while intoxicated" and are not permitted when "a driver simply violates a rule of the road." *Id.* at 535.

The facts plainly do not justify punitive damages and *Collins* is instructive as to why. In *Collins*, the court granted summary judgment on the issue of punitive damages even when an employee had drug-use concerns and six driving infractions, with most of those occurring within a five-month period. *See Collins*, 697 F. Supp. 3d at 1326-27, 1332. One of the driving incidents involved a motor vehicle collision with another vehicle that resulted in both vehicles falling into a ditch. *Id.* at 1325. Despite all of these incidents, the court concluded that the evidence demonstrated that the employee and employers could only be liable for "mere negligence" and granted summary judgment on the issue of punitive damages. *Id.* at 1332.

The evidence shows no pattern of behavior similar to *Collins*. The Court, in holding that the negligent retention, supervision, and entrustment claims could move forward, did so because the evidence presented by the Plaintiff only

20

narrowly met the requirements to establish a prima facie case. The evidence presented showed that Defendant Kelly was responsible for three minor collisions during his employment, along with driving incidents decades ago. This alone is not enough to establish that Defendant Kelly had a pattern of dangerous driving in a manner that amounts to more than gross negligence. Accordingly, the Court grants summary judgment for the Defendants on this claim.

### C. Attorneys' Fees and Costs

Under Georgia law, "[t]he expenses of litigation generally shall not be allowed as a part of the damages." O.C.G.A. § 13-6-11. "[B]ut where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." *Id.* "Since any statute that provides for the award of attorney fees is in derogation of common law, it must be strictly construed against the award of such damages." *Horton v. Dennis*, 325 Ga. App. 212, 216 (2013) (citation modified).

The Plaintiff makes a claim for attorney's fees and costs under all three categories. (*See* Compl. ¶¶ 60-62). But in the Plaintiff's response to the Defendants' Motion for Partial Summary Judgment, the Plaintiff merely defends attorneys' fees on the basis of "bad faith" without addressing the other two categories. Accordingly, the Court treats these claims as abandoned. *See*

21

*Clark*, 544 F. App'x at 854-55 (quoting *Resol. Tr. Corp.*, 43 F.3d at 599).

The Court now turns to the Plaintiffs' claim of "bad faith." "The term 'bad faith' is not defined in [O.C.G.A.] § 13-6-11 or elsewhere in Title 13." *Love v. McKnight*, 321 Ga. 196, 198 (2025). Though the Georgia Supreme Court has never defined what "bad faith" is under the statute, the court held that a finding of bad faith would require "conduct that is generally indicative of intentional wrongdoing or of a reckless disregard of known harmful consequences and must be more than mere negligence." *Id.* at 198-99. Conduct that meets this standard must be "intentional, wanton, reckless, or at least indicative of a conscious indifference to the consequences." *Id.* at 199-200. Where the claim arises out of a traffic violation, the Georgia Supreme Court has rejected the notion that the mere violation of a traffic law can constitute bad faith, even if such offenses are strict liability statutes. *Id.* at 202.

In discussing the punitive damages claim, the Court has already concluded that the evidence demonstrates that the Defendants' conduct, even when viewed favorably for the Plaintiff, amounts only to "mere negligence." And Georgia courts have recognized that the standard for an award of attorney's fees for bad faith and punitive damages is closely related. *Collins*, 697 F. Supp. 3d at 1333 (quoting *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 342 (1984), then citing *Lewis v. D. Hays Trucking, Inc.*, 701 F. Supp. 2d 1300, 1313 (N.D. Ga. 2010), then citing *Ponce de Leon Condos. V. DiGirolamo*,

22

238 Ga. 188, 190 (1997)). Thus, the Court's reasoning for granting summary judgment on the punitive damages claim applies here and the Court will grant summary judgment to the Defendants on the attorneys' fees and costs claim.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion for Partial Summary Judgment [Doc. 48] is GRANTED in part and DENIED in part.

SO ORDERED, this ___5th___ day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge